CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

FILED

AUG 07 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ________, DEPUTY

KEITH D. HOPPER,

TRAVIS FOOTE,

MICHAEL MOORE,

Plaintiffs,

v.

CASE No CIV-26-2052-HE

Jury trial Demanded

Emergency Relief Requested

CASEY HAMILTON, Warden,

ASHLEY ALLEN, Unit Manager,

BAILEY RITTER, Disciplinary Hearing Officer,

SERGEANT SWANSON,

LIEUTENANT FISHER, Disciplinary Hearing Officer,

JUSTIN FARRIS, Director of Oklahoma Department of Corrections,

JOHN AND JANE DOES 1–50, Samantha Calzada, Law Library Supervisor

Defendants.

CIVIL RIGHTS COMPLAINT

42 U.S.C. § 1983

+

Emergency Relief Requested



Original - Clerk of the court

## I. INTRODUCTION

1.Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 for violations of rights secured by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

2.Defendants acted under color of state law as employees, agents, officials, supervisors, and policymakers of the Oklahoma Department of Corrections and Great Plains Correctional Center.

3.Plaintiffs allege they were subjected to retaliation, denial of due process, denial of access to courts, dangerous housing conditions, denial of religious exercise, deliberate indifference to medical needs, and failure to protect.

4.Plaintiffs further allege Defendants knowingly maintained and enforced dangerous housing conditions, retaliatory disciplinary practices, and unconstitutional policies that continue to place Plaintiffs at risk of serious harm.

## II. JURISDICTION AND VENUE

1.This action arises under the Constitution and laws of the United States.

2.Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

3.Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

4.Venue is proper in the United States District Court for the Western District of Oklahoma because the events complained of occurred within this judicial district.

## III. PARTIES

### Plaintiffs

1.Plaintiff Keith D. Hopper is an inmate currently incarcerated at Great Plains Correctional Center, P.O. Box 700, Hinton, Oklahoma 73047.

2.Plaintiff Travis Foote is an inmate currently incarcerated at Great Plains Correctional Center.

3.Plaintiff Michael Moore is an inmate currently incarcerated at Great Plains Correctional Center.

Defendants

1.Defendant Casey Hamilton is the Warden of Great Plains Correctional Center and is sued in his individual and official capacities.

2.Defendant Ashley Allen is a Unit Manager employed by Great Plains Correctional Center and is sued in her individual and official capacities.

3.Defendant Bailey Ritter is a Disciplinary Hearing Officer and is sued in her individual and official capacities.

4.Defendant Sergeant Swanson is a correctional officer employed by Great Plains Correctional Center and is sued in her individual and official capacities.

5.Defendant Lieutenant Fisher is a Disciplinary Hearing Officer and is sued in his individual and official capacities.

6.Defendant Justin Farris is the Director of the Oklahoma Department of Corrections and is sued in his individual and official capacities.

7.Defendants John and Jane Does 1 through 50 are currently unknown employees, supervisors, hearing officers, investigators, classification staff, security staff, and other officials who participated in, approved, were deliberately indifferent to, or failed to correct the violations alleged herein.

8.Plaintiffs request an order requiring Defendants to identify all presently unknown parties and provide their full names, positions, employment information, and service information.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.Plaintiffs have filed grievances, misconduct appeals, notices, complaints, and requests for relief concerning the issues raised in this action and as a result have been targeted and retaliatory actions have occurred.

2.Plaintiffs have attempted to exhaust all available administrative remedies.

3.Plaintiffs allege that grievances and appeals were ignored, delayed, lost, rejected, or otherwise made unavailable through the actions of prison officials.

4.Plaintiff Hopper alleges that prison staff claimed certain appeals were lost despite staff witnessing their submission.

5. Plaintiffs reserve the right to supplement this section with grievance numbers, appeal numbers, receipts, witness statements, and institutional records.

## V. FACTUAL ALLEGATIONS

### February 28, 2026 Cell Search and Cell Phone Misconduct

1. On February 28, 2026, at approximately 2:30 a.m., correctional officers woke Plaintiffs and other inmates from sleep.

2. Plaintiffs and other inmates were ordered to leave their living area while correctional officers conducted a search.

3. Plaintiffs were not permitted to witness the search.

4. The search disrupted and damaged the living area.

5. Correctional staff later alleged that a cellular telephone was discovered during the search.

6. The alleged cellular telephone became the basis for misconduct proceedings.

7. Officers never established who possessed or owned the alleged cellular telephone.

8. Prior to disciplinary proceedings, another inmate claimed ownership of the phone.

9. Officers failed to properly establish possession of the phone by Plaintiffs.

10. Officers failed to complete or provide proper search-and-seizure documentation.

11. Officers failed to establish or provide chain-of-custody documentation.

12. Plaintiffs contend that the investigation and resulting disciplinary actions violated Oklahoma Department of Corrections policy and deprived them of due process.

### Service of Misconducts by Sergeant Swanson

1. Following the search, Sergeant Swanson served Plaintiffs with misconduct paperwork.

2. Plaintiffs were required to sign for acknowledgment of service.

3. Plaintiffs allege Sergeant Swanson required signatures despite not possessing or providing the complete incident reports and offense reports at the time service was demanded.

4.Plaintiffs contend they were denied meaningful notice of the allegations against them.

March 9, 2026 Hearing Before Bailey Ritter

1.On March 9, 2026, Plaintiff Hopper appeared before Bailey Ritter concerning the cellular telephone misconduct.

2.Plaintiff Hopper attempted to present evidence and challenge the allegations.

3.Plaintiff Hopper raised concerns regarding ownership of the phone, lack of chain of custody, and failure to establish possession.

4.Plaintiff Hopper alleges Bailey Ritter denied him an impartial hearing.

5.Plaintiff Hopper alleges Bailey Ritter falsely accused him of using profanity, making inappropriate statements, and interfering with a body camera.

6.Plaintiff Hopper denies those allegations.

7.Plaintiff Hopper alleges those accusations were used as a pretext to deny him meaningful participation in the hearing.

8.Plaintiff Hopper was found guilty.

March 10, 2026 Menacing and Stalking Misconduct

1.On March 10, 2026, Plaintiff Hopper was served with a misconduct charging menacing and stalking.

2.Plaintiff Hopper alleges the misconduct was retaliatory.

3.Plaintiff Hopper alleges the misconduct was based upon fabricated allegations arising from the March 9, 2026 hearing.

4.Plaintiff Hopper again alleges Sergeant Swanson required acknowledgment of service without properly providing supporting reports.

March 13, 2026 Hearing Before Ashley Allen

1.On March 13, 2026, Plaintiff Hopper appeared before Ashley Allen in connection with disciplinary proceedings.

2.Plaintiff Hopper requested review of body-camera footage.

3.Ashley Allen refused to review the footage.

4.Plaintiff Hopper was not provided reports and evidence prior to the hearing.

5.Plaintiff Hopper was found guilty.

6.Plaintiff Hopper alleges Ashley Allen advised him that she convicted him based upon his attitude.

7.Officer Overstreet was present for portions of these events.

8.Following the hearing, Ashley Allen contacted Bailey Ritter regarding Plaintiff Hopper.

9.Plaintiff Hopper contends this demonstrated improper coordination and a lack of impartiality.

Placement in the Level One Pod

1.Approximately two days after the March 13, 2026 hearing, Plaintiff Hopper was placed in the Level One pod.

2.Plaintiff Hopper remained there until approximately July 5, 2026.

3.Plaintiff Hopper alleges he was removed only after seeking injunctive relief in federal court.

4.Plaintiffs contend the Level One pod and eight-man housing units are dangerous and unsafe.

5.Plaintiffs allege these units experience violence, assaults, robberies, extortion, gang activity, drug activity, threats, intimidation, and stabbings.

6.Plaintiffs contend prison officials possess actual knowledge of these conditions.

7.Plaintiffs contend officials receive notice through grievances, incident reports, witness accounts, camera footage, investigations, medical records, and protective-custody requests.

8.Despite that knowledge, Defendants continue to house inmates in those dangerous conditions.

Eight-Man Cells and Unsafe Housing Practices

1.Plaintiffs allege the Oklahoma Department of Corrections has knowledge that the eight-man cells are dangerous housing environments.

2.Plaintiffs allege violent inmates are housed with non-violent inmates.

3.Plaintiffs allege gang-affiliated inmates are housed with inmates who are not gang affiliated.

4.Plaintiffs allege drug users are housed with inmates attempting to avoid drug activity.

5.Plaintiffs allege vulnerable inmates are placed with inmates known for violence, intimidation, robbery, and extortion.

6.Plaintiffs contend these housing arrangements unnecessarily expose inmates to foreseeable harm.

June 24, 2026 Incident Demonstrating Knowledge of Danger

1.On or about June 24, 2026, Plaintiff Hopper personally observed an inmate who had been assaulted multiple times request protection and removal from the pod.

2.Plaintiff Hopper personally observed staff return the inmate to the same housing environment despite the inmate's repeated pleas for safety.

3.Plaintiff Hopper personally observed staff identify the inmate to others as someone attempting to leave the pod.

4.Plaintiff Hopper observed the inmate state in front of institutional cameras that he feared for his life.

5.Plaintiff Hopper observed that only after repeated requests was the inmate removed.

6.Plaintiff Hopper believes institutional camera footage exists documenting these events.

7.Plaintiffs contend this incident demonstrates Defendants' knowledge of dangerous housing conditions.

Photographs of Assault Injuries

1.Plaintiffs possess or are aware of photographs depicting injuries suffered by inmates in the Level One pod.

2.Those photographs include cuts, bruises, abrasions, swelling, facial injuries, and head injuries.

3.Plaintiffs contend such photographs demonstrate ongoing violence within the housing unit.

## ADDITIONAL FACTS AND CLAIMS FOR RELIEF

### Plaintiff Hopper's Court Access Claims

1.Plaintiff Hopper was actively pursuing legal matters, including habeas corpus litigation and related federal court proceedings.

2.Plaintiff Hopper required access to legal research, legal materials, legal mail, legal copying services, notary services, and law-library resources.

3.Plaintiff Hopper's tablet was confiscated by prison officials.

4.The tablet was Plaintiff Hopper's primary means of accessing Westlaw legal research.

5.Plaintiff Hopper alleges the confiscation of the tablet substantially interfered with his ability to conduct legal research and prepare court filings.

6.Plaintiff Hopper's movement was restricted while housed in the Level One pod.

7.These restrictions further limited his ability to conduct legal research and prepare legal pleadings.

8.Plaintiff Hopper incurred copying, notary, and legal expenses despite pauper status.

9.Plaintiff Hopper alleges those expenses negatively affected his ability to purchase basic necessities and hygiene items.

10.Plaintiff Hopper alleges prison officials interfered with his legal mail.

11.Plaintiff Hopper alleges that when he initially attempted to submit an injunction filing to federal court, prison officials removed the injunction documents from the mailing.

12.Plaintiff Hopper was forced to submit a supplemental filing notifying the federal court of the interference.

13.Plaintiff Hopper alleges these actions impaired his constitutional right of access to the courts.

### Plaintiff Hopper's Religious Restrictions

1.While housed in the Level One pod, Plaintiff Hopper was denied access to religious services.

2.Plaintiff Hopper was denied access to religious meetings.

3.Plaintiff Hopper was denied access to religious materials.

4.Plaintiff Hopper alleges these restrictions substantially burdened his ability to practice his religion.

5.Plaintiff Hopper observed other inmates receiving more favorable treatment with respect to property and privileges.

6.Plaintiff Hopper contends the restrictions imposed upon him were retaliatory and discriminatory.

Plaintiff Hopper's Medical and Employment-Related Claims

1.Plaintiff Hopper suffers from blood sugar issues and hypoglycemia.

2.Plaintiff Hopper relied upon canteen access to obtain food items necessary to assist with management of his condition.

3.Defendants restricted Plaintiff Hopper's canteen privileges.

4.Plaintiff Hopper alleges those restrictions interfered with management of his health.

5.Plaintiff Hopper lost his trusted canteen work assignment.

6.Plaintiff Hopper relied upon that employment for income and stability.

7.Plaintiff Hopper alleges loss of that employment caused financial and emotional harm.

Plaintiff Travis Foote

1.Plaintiff Travis Foote was involved in the February 28, 2026 misconduct investigation concerning the alleged cellular telephone.

2.Plaintiff Foote was removed from his living area during the search.

3.Plaintiff Foote was not permitted to witness the search.

4.Plaintiff Foote received misconduct charges arising from the same incident.

5.Sergeant Swanson required Plaintiff Foote to acknowledge receipt of misconduct paperwork without providing all necessary reports.

6.Plaintiff Foote appeared before Bailey Ritter concerning the misconduct.

7.Plaintiff Foote alleges he was denied a fair disciplinary hearing.

8.Plaintiff Foote was found guilty.

9.Plaintiff Foote alleges the disciplinary proceedings were retaliatory and unfair.

10.Following the misconduct proceedings, Plaintiff Foote was placed in the Level One pod.

11.Plaintiff Foote alleges the placement was retaliatory.

12.Defendants knowingly placed Plaintiff Foote into a housing environment known for violence, theft, extortion, and drug activity.

13.Shortly after placement, Plaintiff Foote was robbed.

14.Plaintiff Foote lost property, and canteen as a result.

15.Plaintiff Foote was assigned to housing by Ashley Allen that lacked electrical service despite requiring a CPAP breathing device.

16.Defendants knew or should have known Plaintiff Foote required a CPAP machine.

17.Plaintiff Foote alleges Defendants ignored his medical needs.

18.Since February 28, 2026, Plaintiff Foote has experienced repeated searches, harassment, and retaliatory treatment.

19.Plaintiff Foote's level status was reduced.

20.Plaintiff Foote's canteen privileges were restricted.

21.Plaintiff Foote's telephone privileges were restricted.

22.Those restrictions interfered with Plaintiff Foote's communication with his spouse.

23.Plaintiff Foote pursued grievances and appeals without meaningful relief.

24.Plaintiff Foote alleges other similarly situated inmates received more favorable treatment.

25.Plaintiff Foote alleges he was treated differently because he exercised his rights to file grievances and appeals.

Plaintiff Michael Moore

1.Plaintiff Michael Moore was housed in the Level One pod.

2.Plaintiff Moore was assaulted by multiple inmates while housed in the pod.

3.The assault occurred in the dayroom and was captured on institutional cameras.

4.Following the assault, Plaintiff Moore was placed in segregation for approximately one week while recovering from his injuries.

5.After approximately one week, Defendants returned Plaintiff Moore to the same housing unit where the assault had occurred.

6.Ashley Allen forced Plaintiff Moore to sign a protective-custody waiver.

7.Plaintiff Moore did not believe he could safely remain on the unit.

8.Plaintiff Moore alleges he was forced to sign the waiver under duress or coercion.

9.After returning to the Level One pod, Plaintiff Moore suffered additional assaults, robberies, threats, and violence.

10.Plaintiff Moore suffered a broken jaw.

11.Defendants had knowledge of Plaintiff Moore's injuries.

12.Defendants failed to provide housing appropriate for recovery from those injuries.

13.Defendants failed to provide adequate protection.

14.Defendants knew Plaintiff Moore faced a substantial risk of serious harm if returned to the same housing environment.

15.Despite that knowledge, Defendants forced Plaintiff Moore to remain there.

July 13, 2026 Assault

1.On July 13, 2026, Plaintiff Michael Moore was again assaulted by another inmate while housed in the same housing unit.

2.As a result of the assault, Plaintiff Moore suffered injuries to his mouth.

3.Plaintiff Moore required multiple stitches.

4.Defendants and facility staff possessed actual knowledge of the assault and resulting injuries.

5.Despite knowledge of the assault and injuries, Plaintiff Moore was returned to the same housing unit.

6.Plaintiff Moore had previously been assaulted in that same housing environment.

7.Defendants knew or should have known that returning Plaintiff Moore to the unit exposed him to a substantial risk of additional harm.

8.Defendants nevertheless forced Plaintiff Moore to remain there.

9.Plaintiff Moore fears additional assaults and serious bodily injury if he remains housed in that environment.

10.Plaintiff Moore alleges that Defendants' actions constitute deliberate indifference to inmate safety.

11. Since the July 13th incident Michael Moore has been stabbed, transported to O.U. medical center and forced Back onto the same pod to house.

Knowledge of Dangerous Conditions

1.Plaintiffs allege Defendants had actual knowledge that the Level One pod and eight-man housing units were dangerous.

2.Plaintiffs allege Defendants were aware of repeated assaults, robberies, extortion, threats, intimidation, gang activity, drug activity, and stabbings.

3.Plaintiffs allege that inmates repeatedly requested protection from those conditions.

4.Plaintiffs contend Defendants ignored those warnings.

5.Plaintiffs contend Defendants routinely returned inmates to dangerous housing despite known threats and risks.

6.Plaintiffs contend Defendants failed to take reasonable measures to ensure inmate safety.

Supervisory Notice and Failure to Correct

1.Plaintiffs submitted grievances, appeals, complaints, requests for protection, and requests for intervention.

2.Defendants Hamilton, Allen, Ritter, Swanson, Fisher, Farris, and Doe Defendants possessed notice of the issues raised in this Complaint.

3.Despite notice, Defendants failed to correct the misconduct convictions, retaliatory actions, unsafe housing conditions, denial of rights, and failure-to-protect issues.

4.Defendants failed to intervene.

5.Defendants failed to investigate.

6.Defendants failed to protect Plaintiffs from foreseeable harm.

7.Plaintiffs allege Defendants acted intentionally, recklessly, and with deliberate indifference to Plaintiffs' constitutional rights.

8. Defendants have refused to move Plaintiff to safe housing

VI. CLAIMS FOR RELIEF

COUNT I

Fourteenth Amendment Due Process

1.Plaintiffs incorporate all preceding paragraphs.

2.Defendants denied Plaintiffs fair disciplinary proceedings.

3.Defendants failed to provide proper notice and supporting reports.

4.Defendants failed to provide impartial disciplinary hearings.

5.Defendants failed to properly evaluate evidence.

6.Defendants denied Plaintiffs meaningful opportunities to defend themselves.

7.Defendants found Plaintiffs guilty through procedures that violated due process.

COUNT II

First Amendment Retaliation

1.Plaintiffs incorporate all preceding paragraphs.

2.Plaintiffs engaged in protected conduct including:

- Filing grievances;
- Filing misconduct appeals;
- Filing complaints;
- Pursuing legal actions;
- Exercising court-access rights.

1.Defendants retaliated against Plaintiffs through misconducts, restrictive housing placements, loss of privileges, harassment, repeated searches, and other adverse actions.

2.Defendants' actions were motivated by Plaintiffs' protected conduct.

3.Defendants' actions would discourage a person of ordinary firmness from exercising constitutional rights.

COUNT III

Eighth Amendment Failure to Protect

1.Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

2.Defendants had actual knowledge that the Level One pod and eight-man housing units presented substantial risks of serious harm to inmates.

3.Defendants knew of ongoing violence, assaults, stabbings, extortion, robberies, intimidation, gang activity, and drug activity occurring within those housing assignments.

4.Defendants received notice of these dangers through grievances, incident reports, inmate complaints, witness statements, medical records, protective custody requests, investigations, and surveillance footage.

5.Despite possessing this knowledge, Defendants failed to take reasonable measures to protect Plaintiffs from harm.

6.Plaintiff Moore was assaulted multiple times after being returned to the same housing assignment.

7.Plaintiff Moore suffered a broken jaw and additional injuries requiring stitches.

8.Plaintiff Foote was robbed after placement in the Level One pod.

9.Plaintiff Hopper was forced to remain in a housing environment he reasonably believed to be dangerous and unsafe.

10.Defendants acted with deliberate indifference to known risks of serious harm.

11.As a direct and proximate result of Defendants' actions, Plaintiffs suffered physical injury, emotional distress, fear for their safety, and continuing risks of further harm.

COUNT IV

Eighth Amendment Deliberate Indifference to Serious Medical Needs

1.Plaintiffs incorporate all preceding paragraphs.

2.Plaintiff Hopper suffers from blood sugar issues and hypoglycemia.

3.Defendants restricted Plaintiff Hopper's access to food items necessary to assist with management of his condition.

4.Plaintiff Foote required a CPAP breathing device.

5.Defendants housed Plaintiff Foote in a location without electricity despite having knowledge of his need for the CPAP device.

6.Plaintiff Moore suffered a broken jaw and additional serious injuries.

7.Plaintiff Moore required medical treatment, including stitches following the July 13, 2026 assault.

8.Defendants had actual knowledge of Plaintiff Moore's injuries.

9.Defendants failed to provide adequate protection and safe housing necessary for recovery.

10.Defendants acted with deliberate indifference to Plaintiffs' serious medical needs.

11.As a direct result, Plaintiffs suffered pain, injury, emotional distress, and increased risks to their health and safety.

COUNT V

Denial of Access to Courts

1.Plaintiffs incorporate all preceding paragraphs.

2.Plaintiff Hopper was actively engaged in legal matters, including habeas corpus litigation and related court proceedings.

3.Plaintiff Hopper required access to legal research, legal materials, legal mail, law-library resources, copying services, and notary services.

4.Defendants confiscated Plaintiff Hopper's tablet.

5.Plaintiff Hopper's tablet was his primary means of accessing Westlaw.

6.Defendants restricted Plaintiff Hopper's access to legal materials and legal research.

7.Plaintiff Hopper alleges prison officials interfered with legal mail by removing legal documents from outgoing correspondence.

8.Plaintiff Hopper was required to file a supplemental pleading informing the federal court of that interference.

9.Plaintiffs contend Defendants' actions substantially burdened and impaired Plaintiff Hopper's ability to prepare legal filings and pursue legal remedies.

10.Defendants violated Plaintiffs' constitutional right of access to the courts.

COUNT VI

First Amendment Free Exercise of Religion

1.Plaintiffs incorporate all preceding paragraphs.

2.While housed in the Level One pod, Plaintiff Hopper was denied attendance at religious services.

3.Plaintiff Hopper was denied attendance at religious meetings.

4.Plaintiff Hopper was denied reasonable access to religious materials.

5.These actions substantially burdened Plaintiff Hopper's ability to practice his religion.

6.Defendants lacked adequate justification for these restrictions.

7.Defendants violated Plaintiff Hopper's rights under the First Amendment.

COUNT VII

Equal Protection and Unequal Treatment

1.Plaintiffs incorporate all preceding paragraphs.

2.Plaintiffs were treated differently from similarly situated inmates.

3.Plaintiff Hopper observed inmates with significantly worse misconduct histories who received more favorable treatment.

4.Other inmates were allowed privileges, property, and benefits denied to Plaintiffs.

5.Plaintiffs further allege similarly situated inmates received more favorable appeal outcomes.

6.Defendants intentionally treated Plaintiffs differently without a legitimate, non-retaliatory, or rational basis.

7.Plaintiffs suffered loss of privileges, property, opportunities, and protections as a result.

8.Defendants violated Plaintiffs' rights to equal protection of the laws.

COUNT VIII

Property, Privilege, and Employment Retaliation

1.Plaintiffs incorporate all preceding paragraphs.

2.Defendants removed property, electronic devices, privileges, employment opportunities, and housing benefits from Plaintiffs.

3.Plaintiff Hopper lost his tablet, canteen access, phone access, and trusted canteen employment.

4.Plaintiff Foote lost property following his robbery and suffered restrictions on communication and privileges.

5.Plaintiff Moore lost property, personal security, and safe housing opportunities.

6.Plaintiffs contend these actions were motivated by retaliation and unconstitutional disciplinary proceedings.

7.Defendants intentionally imposed adverse consequences upon Plaintiffs because Plaintiffs exercised protected rights.

8.Plaintiffs suffered financial loss, emotional distress, humiliation, and reduced opportunities as a result.

COUNT IX

Supervisory Liability, Failure to Intervene, and Failure to Correct

1.Plaintiffs incorporate all preceding paragraphs.

2.Defendants Casey Hamilton and Justin Farris occupied supervisory positions and possessed authority to investigate, correct, and prevent constitutional violations.

3.Defendants Allen, Ritter, Swanson, and Fisher directly participated in the misconduct proceedings, housing decisions, and retaliatory actions described herein.

4.Defendants received notice of the misconduct and constitutional violations through grievances, appeals, complaints, reports, requests for relief, court filings, and other communications.

5.Despite possessing notice, Defendants failed to take reasonable corrective actions.

6.Defendants failed to properly supervise employees operating under their authority.

7.Defendants failed to investigate serious complaints of retaliation, unsafe housing conditions, denial of rights, failure to protect, and misconduct.

8.Defendants allowed unconstitutional practices and policies to continue.

9.Defendants failed to intervene despite having authority and opportunity to do so.

10.As a direct result of Defendants' actions and omissions, Plaintiffs suffered the injuries described throughout this Complaint.

11.Plaintiffs are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and all other relief authorized by law.

EMERGENCY REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1.Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

2.Plaintiffs seek immediate injunctive relief because they face ongoing and irreparable harm that cannot be adequately remedied through monetary damages alone.

3.Plaintiffs continue to be subjected to retaliation, unsafe housing conditions, denial of constitutional rights, interference with access to courts, denial of religious exercise, and threats to their health and safety.

4.Defendants possess actual knowledge that the Level One pod and eight-man housing units expose inmates to substantial risks of serious harm.

5.Plaintiffs contend Defendants have repeatedly ignored requests for protection, grievances, appeals, complaints, and notices concerning dangerous housing conditions.

6.Plaintiffs further contend Defendants have retaliated against inmates who exercise rights protected by the Constitution, including filing grievances, filing appeals, pursuing litigation, and seeking relief from the courts.

7.Plaintiff Michael Moore has been assaulted multiple times while housed in the same housing unit.

8.Plaintiff Moore suffered a broken jaw and significant injuries.

9.On July 13, 2026, Plaintiff Moore was again assaulted, suffered injuries requiring stitches, and was nevertheless returned to the same housing unit.

10.Plaintiff Hopper personally witnessed inmates pleading for protection and removal from dangerous housing conditions.

11.Plaintiffs contend the risk of future harm is immediate and ongoing.

12.Plaintiffs further contend that monetary damages alone cannot adequately compensate them for future assaults, retaliation, denial of constitutional rights, or interference with legal proceedings.

13.Plaintiffs therefore request immediate intervention from this Court.

Emergency Relief Requested

1.Plaintiffs request that the Court immediately order Plaintiff Keith D. Hopper transferred to and housed in C-Unit two-man housing.

2.Plaintiffs request that Defendants be prohibited from returning Plaintiff Hopper to the Level One pod or substantially similar housing assignments during the pendency of this litigation.

3.Plaintiffs request that Defendants immediately remove Plaintiff Michael Moore from the housing unit where repeated assaults have occurred.

4.Plaintiffs request that Defendants provide Plaintiff Moore with safe housing pending final resolution of this action.

5.Plaintiffs request that Defendants be prohibited from placing Plaintiffs in housing assignments known to present substantial risks of assault, extortion, robbery, intimidation, gang activity, or serious physical harm.

6.Plaintiffs request that Defendants cease all retaliation against Plaintiffs.

7.Plaintiffs request that Defendants be prohibited from issuing retaliatory misconducts.

8.Plaintiffs request that Defendants be prohibited from interfering with grievances, appeals, legal filings, litigation activities, affidavits, declarations, or requests for judicial relief.

9.Plaintiffs request that Defendants be prohibited from transferring Plaintiffs to a worse facility, more dangerous housing assignment, or more restrictive placement in retaliation for pursuing this litigation.

10.Plaintiffs request that any transfer of Plaintiffs during the pendency of this action be supported by legitimate non-retaliatory reasons.

11.Plaintiffs request that Defendants cease interference with legal mail.

12.Plaintiffs request that Defendants provide meaningful access to legal research, legal materials, legal mail, law-library resources, copying services, notary services, and court access.

13.Plaintiffs request that Defendants provide Plaintiff Hopper access to religious services, religious meetings, and religious materials.

14.Plaintiffs request that Defendants provide medically appropriate accommodations and treatment for documented medical needs.

15.Plaintiffs request that Defendants preserve all evidence relevant to this litigation.

16.Plaintiffs request any additional equitable relief deemed appropriate by this Court.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

Declaratory Relief

A. Declare that Defendants violated Plaintiffs' rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

B. Declare that the disciplinary proceedings challenged in this Complaint violated due process.

C. Declare that Defendants retaliated against Plaintiffs for exercising constitutional rights.

D. Declare that Defendants failed to protect Plaintiffs from known dangers.

Injunctive Relief

E. Grant temporary, preliminary, and permanent injunctive relief.

F. Immediately transfer Plaintiff Keith D. Hopper to C-Unit two-man housing.

G. Prohibit Defendants from returning Plaintiff Hopper to the Level One pod or substantially similar housing environments.

H. Immediately remove Plaintiff Michael Moore from the housing assignment where repeated assaults have occurred.

I. Provide Plaintiff Moore with safe housing.

J. Prohibit retaliatory transfers.

K. Prohibit retaliatory misconducts.

L. Require Defendants to provide meaningful access to legal materials, legal research, legal mail, law-library resources, and court filings.

M. Require Defendants to provide Plaintiff Hopper meaningful access to religious services, meetings, and materials.

N. Require Defendants to provide reasonably safe housing conditions.

O. Require Defendants to preserve all evidence relevant to this action.

Disciplinary and Institutional Relief

P. Expunge disciplinary convictions obtained in violation of constitutional rights.

Q. Restore privileges, status levels, property, employment opportunities, and benefits that were improperly removed.

R. Restore canteen privileges, phone privileges, legal access, and other rights removed as a result of unconstitutional actions.

S. Order a formal investigation into the conduct described in this Complaint.

T. Require review of the conduct of Casey Hamilton, Ashley Allen, Bailey Ritter, Sergeant Swanson, Lieutenant Fisher, Justin Farris, and all persons identified during discovery.

U. Require corrective action designed to prevent future constitutional violations.

V. Require training concerning:

1.Due process in disciplinary proceedings;

2. First Amendment retaliation;

3. Access to courts;

4. Religious accommodation;

5. Evidence preservation;

6. Inmate safety and protection obligations;

7. Protective-custody procedures;

8. Classification and housing decisions.

W. Remove Defendants directly involved in the challenged conduct from supervisory or disciplinary authority over Plaintiffs during the pendency of this action when necessary to prevent retaliation or further harm.

Monetary Relief

X. Award compensatory damages in an amount to be determined by the jury.

Y. Award punitive damages against individual Defendants.

Z. Award nominal damages where appropriate.

AA. Award costs and fees allowable by law.

Additional Relief

BB. Order Defendants to identify all John and Jane Doe Defendants.

CC. Grant such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

VERIFICATION UNDER 28 U.S.C. § 1746

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge, information, and belief.

Executed on: 07/29/2026

Keith D. Hopper, Plaintiff Keith D. Hopper

ODOC Number: 276181

Executed on: 07/29/2026

Travis Foote, Plaintiff ______________

ODOC Number: 506957

Executed on: 07/29/2026

Michael Moore, Plaintiff ______________

ODOC Number: ______________

RESPECTFULLY SUBMITTED

Executed on: 07/29/2026

Keith D. Hopper, Plaintiff Keith D. Hopper

Great Plains Correctional Center

P.O. Box 700

Hinton, Oklahoma 73047

Executed on: 07/29/2026

Travis Foote, Plaintiff ______________

Great Plains Correctional Center

Executed on: 07/29/2026

Michael Moore, Plaintiff 723724

Great Plains Correctional Center

ADDITIONAL FACTS AND CLAIMS FOR RELIEF – Plaintiff Hopper

1. Plaintiff Hopper provided facility staff at G.P.C.C. 3 legal mail envelopes on July 8th 2026. These envelopes where addressed to the Tulsa County District Court Clerk, District Attorneys office, and persiding Judge. All envelopes were certified mail Return Receipt.
2. Plaintiff Hopper on July 12th 2026 stopped by the mailroom to check on the status of the legal mail that was sent out days prior. At that time mailroom Stacey Demotti produced the 3 envelopes to advise me they had not been sent out.
3. Plaintiff Hopper upon receiving a copy of the legal mail log noticed the facility staff had wrote down that the 3 envelopes were sent out on July 9th 2026. (A false data entry)
4. The receipt from the United States postal service clearly shows the envelopes in question did not get mailed until July 13th 2026 also verified by certified mail tracking numbers.
5. Plaintiff Hopper on July 16th 2026 went to the law library to get legal documents notorized and copies made. Then I made request of law library Supervisor I needed Envelopes to send out the needed legal documents to the Tulsa Co. courts, western Federal courts and multiple public officals.
6. Samantha Calzada refused to provide the needed number of envelopes requested despite her having the envelopes in her office.
7. Samantha Calzada told me "I could buy them off canteen if I needed more"
8. I advised her that would take weeks and I had filings that must be sent in. one being an "Emergency Motion"

9. I then advised her my Account Balance was in the negative due to being charged for legal work despite my approval of an "In Forma Pauperis" Application for my fees to be covered. And I did not consent to being charged so much.

10. Samantha Calzada told me to file a grievance. "I complied"

11. On July 17th 2026 I approached Stacey Dematti (Mail room sup) and made request for envelopes to place my legal filings in the mail.

12. Stacey Dematti refused to provide them, refused to call a supervisor, and refused mail service.

13. Plaintiff Hopper tried and Attempted to place my filings in the mail for multiple days later. Finally on July 23rd 2026 I was finally Able to get all needed mailing material and mail items.

14. On July 24th Plaintiff Hopper went to the Law Library to get 2 filings notorized, copies of filings, and 2 envelopes for mail. Samantha Calzada despite not being busy refused to help me,

15. Samantha Calzada told me "I would have to wait until the middle of the following week to get a notary, copies, envelopes.

16. Samantha Calzada However gave help to 2 other inmates from my same unit prior to me Asking.

17. Plaintiff Hopper has advised Samantha Calzada multiple times that she is denying me protected rights and denying me Access to the courts by delaying my filing.

18. Samantha Calzada has become very hostile, aggressive in speech and unprofessional in her Actions towards myself.

19. Plaintiff Keith Hopper recieved a response concerning the refusal to provide materials and the delays of my mailing.

20. Response by wardens office was I must provide proof of a time deadline before they had to provide materials and access to the Law Library.

21 Samantha Calzada has told me multiple time I would only be allowed 2 hours per week for law library Access and that is the only day Im permitted to seek notary, copies, envelopes.

22 Plaintiff Hopper has repeatedly requested more time and been denied.

23. Plaintiff Hopper Does In fact have pending litigation in the western District Court - Habeas Corpus 2254 for unlawful imprisonment Case No CIV-26-1344-SLP, self represented.

24. Plaintiff Hopper Does in fact have pending Litigation in the Tulsa Co. District courts case no. CF-2022-3018 - Jurisdictional challenges

25. Plaintiff Hopper is currently Attempting to get copies of 6 mandamus to file in the O.C.C.A. but have been delayed in getting copies and materials to send.

26. The Actions of the facility staff began after I began filing grievances and standing up for my protected Activities. This is having the apperance of Retaliation

27. The Actions of facility staff are directly affecting my ability to timely file motions and pleadings. It has placed me under a constant state of Duress and affected my ability to focus and properly and effectively defend my legal litigation.

Grounds / claims for Relief - Plaintiff Hopper

28 Plaintiff Hopper has a protected right to have access to the courts without delay, obstruction, in a timely manner.

29. Plaintiff Hopper request immediate intervention and relief against prison staff

30. Plaintiff Hopper requests an order directing prison officals to immeditelly cease all forms of retaliation of Any Kind.

31 Plaintiff Hopper request this court order facility staff to cease All, interference, obstruction, denial or delaying me from promply get legal documents notorized, copies, mailing materials and make Access to the law library more avaliable.

32. Plaintiff Hopper request this court to issue an order to the facility to ensure safe living conditions and NO retalitory moves to a worse unit or transfer to a different prison facility that would interfere with the jurisdiction of this court or to a facility where violence and harm are possible.

33. Due to the ongoing Harassment / retaliation / staff misconduct / interference with legal work / placement in Dangerous 8 man cells and neglect by prison staff due to the enviroment encourage here I make request of this court to order D.O.C. To transfer me to the Oklahoma State Reformatory medi security yard in Granite OK. This prison Keeps me in a respectable distance from this honorable court, It does not have the Known dangerous 8 man living units, And allows Plaintiff to live in a retaliation free enviroment.

34. Plaintiff Hopper makes request that an order be given (to ensure proper Access to the courts are given to other inmates) to facility heads to reassign Samantha Calzada to a posistion without supervisory posistion pending an investigation and proper training of her Actions.

ADDITIONAL FACTS and ClAIMS FOR Relief. - Travis Foote

1. Plaintiff Travis Foote Although not placed in the Level I POD is currently being housed in an eight man cell known for its violent and dangerous living Assignment.
2. Plaintiff Travis Foote has been subject to multiple Acts of retaliation by multiple staff members,
3. Plaintiff Foote has been subjected to multiple searches without cause nor reason.
4. Plaintiff Foote is still being denied Due process on multiple grounds.
   A - Improper search and seizure in violation of D.O.C procedures. Staff refuses to provide proper search and seizure paperwork and forms in Violation of 040115 O.D.O.C. policy.
   B - Staff intentional abuse of a misconduct procedure to harass and deprive me of my JOB, canteen, phone.
   C - D.H.O swenson refusing on multiple occassions to provide Documentary evidence to prepare for Disiplinary hearings and making false claims against me on multiple occassions
   D - Being denied fair and impartial hearings and recieving more sanctions after being found guilty in violation of ops and procedures.

Grounds / Claims for Relief - Travis Foote

5. Do to the ongoing harassment, retaliation, Denial of Due process, placement in Know Violent and Dangerous 8 man cells, improper searchs and abuse of the misconduct proceedings. Plaintiff Foote request a transfer to the O.S.R. yard in Granite OK. This yard is requested for multiple

grounds:

A. I have been placed at the O.S.R. facility prior to being transfered to G.P.C.C with out cause.

B. I have experience / personal knowledge that it is in whole a much safer and respectful yard.

C. I have already been approved to work at that yard.

D. It remains close to this court and is within its jurisdiction.

E. Staff at O.S.R. Act in a much more professional and honorable way.

6. An order to facility staff here at G.P.C.C. To cease all forms of Harassment, retaliation, targeting and abuse of the misconduct proceedings.

7. An order to facility staff to cease the constant harassment by way of searches that do not comply with O.D.O.C. ops and guidelines.

8. An order directing All members named in this petition As Defendants to Cease from additional contact and supervisory posistions over me.

Additional Grounds + Relief.

1 8 man cells have proven Dangerous and not safe housing. Constant violence and harmful activities recorded. Not to mention the acts that are not reported and hidden by staff

Relief.

1. order All reported Acts of violence and reports to be provided to this court so this court may make a accurate assessment of the 8 main cells.

2. Order the facility and Justin Farris to cease housing inmates in 8 main cells due to the danger they impose to inmates

3. Add all inmates housed in these 8 man cells to be added to this suit and class action be approved.

4. Compensate all inmates accordingly.

July 28th 2026

Keith Hopper
Keith Hopper 276181

Travis Foote 506951

Michael Moore
Michael Moore 703724

DECLARATIONS OF PLAINTIFFS

Pursuant to 28 U.S.C. § 1746

DECLARATION OF KEITH D. HOPPER

Pursuant to 28 U.S.C. § 1746

I, Keith D. Hopper, declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. I am incarcerated at Great Plains Correctional Center.

2. On or about February 28, 2026, at approximately 2:30 a.m., correctional staff woke me and other inmates from sleep, removed us from our cell, and conducted a search.

3. I was not permitted to witness the search.

4. During the search, staff disrupted and destroyed the living area.

5. Staff later alleged that a cellular telephone was discovered and used that allegation as the basis of misconduct proceedings.

6. Another inmate claimed ownership of the phone before my disciplinary hearing.

7. Staff failed to establish that I possessed or owned the alleged phone.

8. Staff failed to provide proper search, seizure, and chain-of-custody documentation.

9. Sergeant Swanson required me to sign misconduct paperwork despite not providing the necessary supporting reports.

10. On March 9, 2026, I appeared before Bailey Ritter concerning the cellular telephone misconduct.

11. I was denied a fair opportunity to defend myself.

12. Bailey Ritter falsely accused me of misconduct during the hearing.

13. I was found guilty.

14. On March 10, 2026, I was served with a menacing and stalking misconduct.

15. I believe that misconduct was retaliatory.

16. On March 13, 2026, I appeared before Ashley Allen for a disciplinary hearing.

17. I requested review of body-camera footage.

18. Ashley Allen refused to review the footage.

19. I was found guilty.

20. Ashley Allen advised me that she convicted me because of my attitude.

21. Approximately two days later I was placed in the Level One pod.

22. I remained there until approximately July 5, 2026.

23. While housed there, I was denied religious services, religious meetings, and religious materials.

24. My tablet was confiscated.

25. My tablet was my primary means of accessing Westlaw legal research.

26. My legal research and court access were significantly impaired.

27. My phone privileges, canteen privileges, and property rights were restricted.

28. I lost my trusted canteen job.

29. I suffer from blood sugar issues and hypoglycemia.

30. Restriction of canteen access negatively affected my ability to obtain food items used to manage my condition.

31. I personally observed violence, assaults, robberies, extortion, gang activity, drug activity, and threats within the Level One pod and eight-man housing units.

32. On June 24, 2026, I personally observed an inmate who had been assaulted multiple times repeatedly beg staff for protection.

33. I personally observed staff return that inmate to the same dangerous housing environment.

34. I personally observed the inmate stand in front of institutional cameras and state that he feared for his life.

35. I have personally observed inmates suffer cuts, bruises, abrasions, swelling, and other injuries from assaults in the pod.

36. Photographs exist documenting many of these injuries.

37. I object to being housed in the Level One pod or other dangerous eight-man housing units.

38. I request placement in C-Unit two-man housing because I believe it is safer and more secure.

39. I believe the actions described above were retaliatory and violated my constitutional rights.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 07/19/2026

Signature: Keith D. Hopper

Printed Name: Keith D. Hopper

ODOC Number: 276181

Housing Assignment: E-C-2

Date Signed: 07/19/2026

— PAGE BREAK —

DECLARATION OF TRAVIS FOOTE

Pursuant to 28 U.S.C. § 1746

I, Travis Foote, declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. I am incarcerated at Great Plains Correctional Center.

2. I was involved in the February 28, 2026 cellular telephone misconduct investigation.

3. I was removed from the housing area during the search.

4. I was not allowed to witness the search.

5. I was later charged in connection with the cellular telephone misconduct.

6. Staff failed to establish ownership or possession of the alleged phone.

7. Sergeant Swanson required me to sign misconduct paperwork without providing required supporting reports.

8. I appeared before Bailey Ritter concerning the misconduct.

9. I was denied a fair disciplinary hearing.

10. I was found guilty.

11. I believe the disciplinary proceedings were retaliatory and unfair.

12. Following the disciplinary proceedings, I was placed in the Level One pod.

13. The Level One pod was dangerous and unsafe.

14. Defendants knew the pod was associated with violence, theft, extortion, and drug activity.

15. Shortly after being placed there, I was robbed.

16. I lost property as a result.

17. I was housed in a location without electricity despite requiring use of a CPAP breathing device.

18. Staff knew or should have known of my CPAP requirement.

19. Since February 28, 2026, I have been subjected to repeated searches, harassment, and retaliation.

20. My level status was reduced.

21. My canteen privileges were restricted.

22. My phone privileges were restricted.

23. Those restrictions interfered with communication with my spouse.

24. I pursued grievances and appeals without meaningful relief.

25. I believe other similarly situated inmates received more favorable treatment.

26. I believe I was treated differently because I exercised my rights through grievances and appeals.

27. I suffered emotional distress, loss of privileges, fear, and loss of property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 07/19/2026

Signature: [signature]

Printed Name: Travis Foote

ODOC Number: 506951

Housing Assignment: ECHO- FOX-2

Date Signed: 7-19-26

— PAGE BREAK —

DECLARATION OF MICHAEL MOORE

Pursuant to 28 U.S.C. § 1746

I, Michael Moore, declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. I am incarcerated at Great Plains Correctional Center.

2. I was housed in the Level One pod.

3. The Level One pod was dangerous and unsafe.

4. While housed there, I was assaulted by multiple inmates in the dayroom.

5. The assault occurred on institutional cameras.

6. Following the assault, I was placed in segregation for approximately one week while I recovered.

7. After approximately one week, I was forced back into the same housing unit where I had been assaulted.

8. Ashley Allen forced me to sign a protective-custody waiver.

9. I did not believe I could remain safely housed in that environment.

10. I signed because I was forced to do so.

11. After being returned to the unit, I was subjected to additional assaults, robberies, threats, and violence.

12. I suffered a broken jaw.

13. Staff knew about my injuries.

14. Staff failed to provide a safe environment for recovery.

15. Staff knew I faced a substantial risk of serious harm if returned to the same housing unit.

16. Despite that knowledge, staff forced me to remain there.

17. On July 13, 2026, I was again assaulted by another inmate while housed in the same housing unit.

18. I suffered injuries to my mouth.

19. I required multiple stitches.

20. Staff had actual knowledge of the assault and my injuries.

21. Despite knowledge of the assault and injuries, I was forced back into the same housing unit.

22. I believe returning me to the same housing unit placed me at continued risk of serious physical harm.

23. I fear for my safety if I remain housed in that environment.

24. I have suffered physical injuries, pain, emotional distress, fear, and ongoing risk of additional harm.

25. I believe Ashley Allen and other supervisory officials were aware of the dangerous conditions and failed to correct them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 07/19/2026

Please Refer to following page for additional facts.

Signature: Michael Moore

Printed Name: Michael Moore

ODOC Number: 723726

Housing Assignment: D-B-1

Date Signed: 07/19/2026

26. This this additional facts: Since the production of this Document I have been subjected to further violence and staff is Aware and Refuses to Act and correct the situation.

27. I was Assaulted by another inmate in the Delta Bravo Pod.

28. This inmate stabbed me in the Back with a sharpened instrument.

29. As a result of this stabbing I had to be taken to O.U. medical center for immediate care.

30. I was returned to the same housing assignment over objection where I have now been Assaulted multiple times with facility staffs Knowledge and now stabbed.

31. I am is fear that things will only get worse.

32. I now suffer from nightmares and other mental Health issues

Declaration of Keith-D: Hopper #276181
Pursuant to 28 U.S.C. 1746

I, Keith-D: Hopper under penalty of Perjury declare that the following is true and complete based on my personal knowledge;

1- I am incarcerated at great plains correctional Center.

2. on 6/8/2026 I personally handed mailroom worker known to us inmates as "Ms Stacey" a package addressed to the western federal courts. (legal mail) In this package I had 3 different Documents.

- Emergency Writ of Habeus Corpus
- Emergency Motion for injunctive Relief
- Memorandum of Law in support of.

3. on 6/9/2026 these Documents show filed, stamp and recieved by the Western Federal courts except for the Emergency Motion for injunctive Relief and the memorandum of Law.

4. On or about June 16th 2026 I recieved a copy from the western Federal courts, clerk of the courts of Documents sent. I they discovered that the documents had been removed. These documents directly exposed the actions of prison officials and the continued Denial of Access to the courts and abuse of Authority, and retaliation.

5. I then sent in a supplemental filing with the removed documents. these where in fact filed on June 22, 2026.

6. On 7/08/2026 I had sent thru the prison mail system multiple Legal mail packages to the Tulsa county district court clerk, district attorneys office, and presiding judge. These where Time sensitive motions.

7. on 7/17/2026 I stopped at the mail room window to check on the status of the mail sent on 7/08/2026 and to get copies of the certified mail, return reciept for my personal records. upon doing so

I discovered the mail was still sitting in the mail room office. Ms Stacey informed me there was an issue with the cost of the mail it was being addressed. I then asked for copies of the certified mailing numbers. She refused and said they would be sent to me. (I never recieved them)

8. On Thursday July 16th 2026 I was allowed to go to the Law Library to get documents notarized, copied and get the envelopes needed to place these item in the mail.

9. The law Library clerks took my paperwork to get copied. Upon receiving my copies I discovered the copies where not in proper order sorted, and pages missing. I spent several hours attempting to get these documents in order, there where several different filings to multiple places mixed up. The law Library clerk smiled as if this where funny. Which makes me believe this was an intentional act of retaliation.

10. Upon requesting the desired envelopes to send my legal mail to the proper people to be properly served as required in Federal Rules of procedure I was provided approx. Half of what was needed by Samantha Calzada law library supervisor. I then allowed her to look at my certificate of service to show her the people I was required to serve. Mrs. Calzada advised me other inmates needed envelopes too I could buy envelopes off canteen. I then advised her my account Balance was in the negative Balance due to being charged 25¢ per page of copies, legal mailing fees and other charges associated with the case. (This day alone it cost me over $100.00 for copies)

I then advised Mrs. Calzada I need additional envelopes, she had them in the office and her actions where denying me access to the courts. Her response was "to file a grievance." I told her I did not have weeks to wait but I then filed a Request to Staff and presented it to her. I was provided a copy.

11. On 7/17/2026 the following day I went to the mailroom to send out legal mail and to get the status of my mail that had been sent out on the 8th but was still in the office on the 12th. I discovered that it was finally sent out on the 13th Taking 5 days to simply be mailed. This has happened numerous times. I also was informed by Ms. Stacey that she was the only worker that handled my mail that was sent out on 6/8/2026. I advised her of the missing documents and that multiple people witnessed me place the documents in the envelope prior to her recieving them. Ms. Stacey then begin to get upset and angry. I then informed her I needed more envelopes that the law Library Supervisor Mrs. Calzada had refused to provide what was needed. She told me I had to go through Mrs Calzada. I told her in a calm tone this was denying me access to the courts and politely asked who could I speak to to address this so it could be resolved now instead of taking weeks waiting on response on a Request to staff. These filings needed sent to the court.

12. Mrs Stacey then advised me that she would go and check with her superior to hold on at the window. She then shut the door an left. I was under the impression she was going to get her superior so we could resolve the issue. Instead she had security come out, 2 security officers came out in a very aggressive

manner ordering me to leave immeditally for being disruptive. I asked them how I was suppose to get my mail mailed or how to get things I needed. Again in a very aggressive manner I was ordered to leave.

13. I immeditally left and went to my unit manager "Mr Payne" we had a meeting in his office behind a closed door. Mr Payne was very polite, professional, and attentive. I then began to inform him of the continued retaliation by staff and unprofessional behavior I was experiencing. I then explained to him my issue with being denied access to the courts and continued retaliation and unprofessional conduct. While in this meeting not one but 2 case manager interupted very rudely to interfere. During our meeting you could hear these case managers saying my name and being negative against me. I asked the unit manager to please address this behavior. He said he would. He then advised me he would look into the issues with my mail and inform me.

14. Approx a couple hour later I seen Mr payne and he refused to speak to me and never came to bring me the envelopes I needed.

15 The Actions by Samantha Cubude have directly interfered with my ability to the courts and are intentional and retalitory in nature. I gave oral notice to her repeatedly that her actions where violating my right to access the courts and she refused to comply.

16. Mailroom officer "Ms Stacey" not only refused to allow me to mail my legal mail on 7/17/2026 in direct violation of my

right to access the courts but admitted to being the only worker to handle my mail on 6/8/2026 where mail was removed prior to the courts recieving them. Additionally her actions of calling security stating I was being disruptive placed me in immediate danger. Security was under the false impression I was being disruptive and came ready to get physical. not only that but security could of retaliated and searched my cell making 7 inmates angry and upset with me which can get me attacked and severly hurt.

17. on 7/17/2026 at about 8:30 pm I recieved in the mail a copy of the inmate legal mail log in sheet. on this sheet it shows my mail sent out on 7/9/2026. attached to it was the reciept of mailing from the mail office I demanded. The date on the reciept was 7/13/2026. The legal mail log has been intentionally and knowingly falsified and is not accurate. An attempt to decieve and mislead the courts and myself.

These actions are simply retaliation and uncalled for.

These actions place me in direct danger and places me in harms way. not only with staff but other inmates.

These actions are very unprofessional, Deceptive, and done without merit.

These actions are malicious in nature and they refuse to comply with not only D.O.C. ops but the law. Interventon is need to secure my safety and well being. This facility is begining to escalate and are attempting to find ways to try to discredit me.

I do not consent to this treatment and to the actions of

this staff.

I Keith-Di Hopper am giving Judicial notice to this honorable court of these actions.

If harm comes to me from inaction of this court it would be a miscarriage of Justice and responsibility could rest with you.

I state everything under Penalty of Perjury Pursuant to 28 U.S.C. 1746.

If there is no rebuttal to this affidavit within the federal rules of civil procedure of 21 days from service and filing then by acquiescence they are deemed confessed.

Respectfully submitted in Good faith

Keith-Di Hopper 7/17/2026
Keith-Di Hopper sui juris
All rights reserved / without recourse
UCC 1-308